# H. B. Gish *v.* Jacob Brown, Appellant.

| 171 | 479 |
|---|---|
| 181 | 632 |
| 171 | 479 |
| 21 SC | ³577 |
| 171 | 479 |
| 23 SC | ³538 |
| 171 | 479 |
| 214 | ³ 17 |
| 214 | ³ 18 |
| 171 | 479 |
| f 34 SC | ³244 |

*Ejectment—Deed—Delivery—Evidence.*

A deed to the plaintiff by his father is properly admissible in evidence in an action of ejectment, where it has been proved that it was properly executed and delivered by the father in his lifetime to a friend, with words indicating an intent to convey the land to his son, and that after the father's death the person having the custody of the deed gave it to his attorney, who delivered it to plaintiff.

Where the grantor delivers a deed to a third person with absolute direction to hold until the grantor's death, and then to deliver the deed to the grantee, who is grantor's son, a delivery to the son by the custodian of the deed after the grantor's death will pass title to the son.

*Practice, S. C.—Assignments of error—Evidence.*

An assignment of error to the exclusion of testimony will not be considered where the assignment fails to set forth the offer, the objections thereto, and the ruling of the court thereon.

Argued June 4, 1895.  Appeal, No. 404, Jan. T., 1895, by defendant, from judgment of C. P. Lancaster Co., May T., 1892,

No. 20, on verdict for plaintiff. Before STERRETT, C. J., GREEN WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for two hundred and seven acres of land in West Donegal township. Before LIVINGSTON, P. J.

At the trial it appeared that the land in dispute was formerly owned by John S. Gish, father of Henry B. Gish, the plaintiff. John S. Gish died on March 15, 1889, intestate, leaving six children to survive him.

From the uncontradicted testimony it appeared that on March 4, 1882, John S. Gish, Henry B. Gish, Christian Rutt and Christian H. Coble met at the house of Henry B. Gish. Coble was a scrivener and drew a deed for the land in controversy from John S. Gish to Henry B. Gish, an agreement and reservation between John S. and Henry B., and a bond by Henry B. to John S. for $15,000. John S. Gish executed the deed and Henry signed the agreement and bond. Coble had indorsed an envelope in which to place these papers, "Property of John S. Gish." This was done without instructions from any one. John S. Gish put the papers in the envelope, sealed it and handed it to Rutt, saying, according to testimony of Rutt, "I will make a deed for the place to Henry;" "I will give this to you (Rutt) to hold." He said that the farm should be Henry's, and after he handed the papers to Rutt he said, "Now, the farm is gone." He instructed Rutt to hold the papers until after his death and then to give them to his son Henry.

After the death of John S. Gish, Christian Rutt produced to the Gish heirs and opened in their presence this sealed package left with him by their father. The seal was broken and it was found to contain the three papers above referred to. The bond had on it an indorsement of cancellation. Mr. Rutt was at that time a client of Hon. H. C. Brubaker, then a practicing attorney, now associate law judge of the courts of Lancaster county Rutt brought the envelope with the papers to Mr. Brubaker, who afterwards became counsel for Henry B. Gish, although he was not counsel for him at that time. Mr. Brubaker sent for Gish and gave him the deed, which Gish returned to Mr. Brubaker to keep for him. In the meantime the heirs of John

S. Gish, under whom the defendant here claims, took possession of the farm in dispute, and they and their tenants have had it ever since.

The court, under objection and exception, admitted in evidence the deed from John S. Gish to Henry B. Gish. [1]

The court admitted, under objection and exception, the testimony of Christian Rutt, deceased, taken on a bill in equity by Henry B. Gish against the administrator of his father's estate for the specific performance of the contract for the sale of the land in controversy. [2]

His testimony related to what took place at the meeting of March 4, 1882, when the papers above referred to were left in his possession.

He further testified as follows:

Q. If anything was said by John S. Gish about having had a settlement with his son, Henry B. Gish, at the time, please state what it was.

Objected to by defendant. Admitted, and defendant excepts. Bill sealed.

A. He said he had a settlement with Henry and that he lived with Henry a number of years—as near as I can recollect, ten years—and that Henry had been good to him, and also spoke about some debts that Henry was to pay. [3]

Hon. H. C. BRUBAKER was asked the question:

Q. Judge, you have already been on the stand, called by the other side, and have testified you received this deed from Christian S. Rutt; did you receive from him any instructions what to do with it?

Objected to by defendant, on the ground that no matter what Rutt may have communicated to Judge BRUBAKER, the instructions would amount to nothing, unless there was proof in the first instance that Christian S. Rutt had authority to give instructions or directions from John S. Gish as to what should be done with it. Admitted, and defendant excepts. Bill sealed.

Q. Please state what you were instructed by Mr. Rutt to do with it.  A. I was instructed by Mr. Rutt to deliver the deed to Henry B. Gish.  I didn't know Henry B. Gish; he was an entire stranger to me.

The Court: Did you do so?  A. I did so. [4]

Defendant's point was, among others, as follows:

3. If the jury believe, from all the evidence in this case, that the delivery of the deed was conditioned upon the payment by Henry B. Gish of the fifteen thousand dollars ($15,000) judgment and the charges mentioned in the agreement or reservation, and the said judgment was never paid or canceled, then if the jury also find that there was a delivery of the deed, there can only be a verdict for plaintiff conditioned upon his paying:

(a) Fifteen thousand dollars ($15,000), with interest at five per cent from April 1, 1882, to this date, to the administrator of John S. Gish, deceased.

(b) One thousand dollars ($1,000) to the said administrator for funeral expenses, tombstone, and the further payment of two thousand dollars ($2,000) to Catherine Boyer on or before March 15, 1897, and twenty-one hundred dollars ($2,100) unto the seven children of Anna Breneman, deceased, and of three hundred dollars ($300) unto Catherine Wagner, and of three hundred ($300) to Adaline Wagner on or before March 15, 1897. *Answer:* The part marked ' a ' we refuse for the reason that the bond given for the payment of the $15,000, named in the paragraph, dated as of even date, and although with the deed and agreement, March 4, 1882, delivered to Christian Rutt; and delivered to Christian Rutt with the other papers and left in his possession until after the death of John S. Gish, has this written upon the back of it : " This obligation is hereby cancelled, and made null and void, for valuable consideration, to me in hand, paid by the said within named Henry B. Gish, this first day of April, 1882. (Signed) John S. Gish." And the testimony shows that the signature was the authentic signature of John S. Gish. So that portion of it we will have to refuse. [5, 6]

The court charged in part as follows:

[So, that if the jury believe there was a delivery of the deed by John S. Gish to Christian Rutt with absolute direction to hold until his death and then to be delivered to his son, Henry B. Gish; in such a case a delivery actually made, as we have said, by Christian Rutt to Henry B. Gish would relate back to its date of execution and make it equivalent to a delivery by John S. Gish at that time for ordinary purposes.] [7]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence; (5–7) above instructions, quoting; (8) "in excluding Jacob G. Oweiler, as a witness offered by the defendant, to testify to matters occurring during the lifetime of John S. Gish."

*J. Hay Brown* and *W. U. Hensel*, for appellant.—The case for the plaintiff and appellee gains little from the fact that after Gish handed the papers to their depository, he said, "now the farm is gone," "the place is gone:" Bash v. Bash, 9 Pa. 260.

Delivery is essential to the validity of a deed. The question of delivery is for the jury: Critchfield v. Critchfield, 24 Pa. 100.

The presumption of the delivery of a deed, arising from the fact of its being recorded, is one that may be rebutted and destroyed by counter-evidence: Boardman v. Dean, 34 Pa. 252; Thompson v. Lloyd, 49 Pa. 127; Duraind's App., 116 Pa. 93.

*H. M. North* and *C. I. Landis*, for appellees.—The admission of the deed was objected to "on the ground that there is no proof of delivery." There was no objection to the execution of the deed. In Keichline v. Keichline, 54 Pa. 75, it was held that a deed duly proved or acknowledged is entitled to be received, although never recorded: Hamilton v. Galloway, 1 Dallas, 63; Kelly v. Dunlap, 3 P. & W. 136.

There was ample evidence of the delivery of the deed, both in fact and in law: Stephens v. Huss, 54 Pa. 20; Stephens v. Rinehart, 72 Pa. 434; Belden v. Carter, 4 Day, 66; Levergood v. Bailey, 1 Woodward, 275.

Critchfield v. Critchfield, 24 Pa. 100, differs from this case, as there the deed never passed out of the possession of the grantor.

In Thompson v. Lloyd, 49 Pa. 127, there was no instruction as to the delivery.

In Appeal of Louise Duraind, 116 Pa. 93, the deed remained in the possession of the grantor until her death.

In Baum's Appeal, 113 Pa. 58, it was held that an escrow takes effect from the second delivery, the title not being perfected in the grantee until the happening of the condition; but the grantor, when the deed has been placed in the hands

of a third party as an escrow, cannot, after the happening of the act on which delivery is conditional, prevent delivery taking effect by getting possession of the deed.

PER CURIAM, October 7, 1895 :

If the deed of March 4, 1882, from John S. Gish to his son Henry B. Gish, the plaintiff, for the land in controversy, had been admitted without competent evidence of its execution and delivery, there would be some merit in the first specification of error, but such was not the fact. The execution of the deed was not seriously questioned, and the testimony as to its delivery, as claimed by the plaintiff, was quite sufficient to justify the submission of that question to the jury. There was, therefore no error in admitting the deed in connection with the testimony as to those facts. Nor was there any error in admitting the testimony complained of in the second to fourth specifications inclusive. It requires no argument to show that it was both competent and relevant to the issue. It tended to show title in the plaintiff.

Without reciting or summarizing the testimony referred to, it is sufficient to say that it was fairly submitted to the jury, with full, correct and adequate instructions as to its effect, etc., and the verdict has, by necessary implication, established the facts that the deed in question was duly executed and properly delivered.

There is no error in the learned judge's answer to defendant's third point for charge, referred to in the fifth and sixth specifications; nor, in that part of his charge recited in the seventh specification. The eighth specification is not according to rule and is therefore dismissed.

We find nothing in either of the assignments of error that requires extended comment.

Judgment affirmed.