## Grasso, Appellant, v. John Hancock Mutual Life Insurance Company.

Argued September 14, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*William D. March,* for appellant.

*Joseph V. Restifo,* for appellees.

OPINION BY HOFFMAN, J., November 11, 1965:

On August 25, 1965, Anthony Grasso died, leaving three insurance policies issued in his name by the John Hancock Mutual Life Insurance Company. Mr. Grasso was separated from his wife, Grace Grasso. The named beneficiary in each of the policies was "Catherine Grasso, wife," a person with whom Mr. Grasso was living at the time of his death. Catherine Grasso is also known as Catherine Bowman, but the parties have stipulated that she is the beneficiary referred to in the policies. Mr. Grasso is also survived by a sister, Catherine Cottone, who claims the proceeds of these policies by virtue of an oral assignment.

Miss Bowman brought suit in assumpsit against the insurance company to recover death benefits under the policies. The company petitioned the court for leave to interplead Mrs. Cottone and Mrs. Grasso. The interpleader was allowed, and the proceeds of the policies were paid into court.

At trial, Mrs. Cottone took the witness stand in an effort to prove the alleged oral assignment. Miss Bowman's attorney objected to any testimony by Mrs. Cottone on the ground that she was an incompetent witness by reason of the "Dead Man's Act." Mrs. Cottone's attorney then made the following offer of proof:

"MR. RESTIFO: I would like to make this offer of proof, your Honor. The testimony which I would like to elicit from Mrs. Cottone is that on Saturday,

August 17, 1963, the decedent came to her house and borrowed $50. from her, stating that he had to pay some premiums on his life insurance policies. And that the next day, Sunday, August 18, 1963, he came back to her house and gave her the three policies in question, stating that he was—he wanted her to use the policy proceeds to pay for his funeral expense. He gave her the policies and along with them he gave her two receipts for life insurance premium payments."

The Court refused the offer of proof and sustained the objection. Since Mrs. Cottone could not establish the alleged oral assignment by any other evidence, she closed her case, and a verdict was directed in favor of Miss Bowman.

Mrs. Cottone filed a motion for new trial. The lower court, sitting en banc, decided that the trial judge incorrectly excluded her testimony and ordered a new trial. From this order, Miss Bowman now appeals.

The "Dead Man's Act" provides:

"Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy. . . ." Act of May 23, 1887, P. L. 158, §5, cl. (e), 28 P.S. §322.

Although Mrs. Cottone is a surviving party to the alleged assignment, this alone fails to disqualify her under the "Dead Man's Act." It must further appear that the rights of the deceased have passed to the other party on the record who represents his interest. *Wolfe v. Scott*, 275 Pa. 343, 346, 119 A. 468, 469 (1923). See

also 2 Henry, Pennsylvania Evidence, §774 p. 219 (4th Ed. 1953), and cases cited therein.

In the instant case, however, the deceased's estate is not an interested party within the meaning of the act, nor are the rights of the deceased represented by another party to the present record. The antagonist in this case, Miss Bowman, is suing in her own right as the beneficiary designated under the policies. Her recovery would not, in any way, benefit the estate of Mr. Grasso. In light of the disparate interests of decedent and beneficiary, both our Court and the Supreme Court have stated that a beneficiary claims only in his own right. Consequently, persons claiming insurance proceeds against designated beneficiaries are not witnesses adverse to any rights of the deceased so as to render them incompetent to testify. *Fulforth v. Prudential Insurance Company,* 147 Pa. Superior Ct. 516, 24 A. 2d 749 (1942) ; *Gritz v. Gritz,* 336 Pa. 161, 7 A. 2d 1 (1939).

Miss Bowman attempts to demonstrate Mrs. Cottone's adverse interest by pointing out that each of the policies provided for cash surrender values, loan values and dividend right. She argues, therefore, that, "If an assignment occurred during the lifetime of the insured, the assignees could have borrowed on the policies, cash surrendered the same and collected and spent the dividends. Such rights are manifestly adverse to that of the decedent."

This analysis is clearly incorrect. It is well established that the adverse interest which will disqualify a witness under the "Dead Man's Act" must exist at the time the witness is called. *First National Bank of Bloomsburg v. Gerli,* 225 Pa. 256, 261, 74 A. 52, 53 (1909) ; *Broderick Co. v. Emert,* 110 Pa. Superior Ct. 327, 332, 168 A. 512, 514 (1933). See also 2 Henry, Pennsylvania Evidence, §772, p. 213 (4th ed. 1953). No such adverse interest existed when Mrs. Cottone

attempted to testify. The death benefits sued upon did not come into being until decedent's death, nor does his estate have any direct interest in its proceeds. Moreover, any adversity with respect to cash values or dividend rights is not at issue in this case. Consequently, "Her competency as a witness against some other representative of the deceased assignor could not properly be raised in this issue between these parties." *Carpenter v. U. S. Life Ins. Co.,* 161 Pa. 9, 15, 28 A. 943, 944 (1894).

In point of fact, decedent's estate can only gain by the admission of Mrs. Cottone's testimony. She is claiming as assignee to pay the estate's funeral expenses. If she recovers the policy benefits, the estate will gain, since it will not have to pay these expenses. Conversely, if Miss Bowman's position is sustained, the decedent's estate will lose, since it will have to pay all funeral expenses alone. It is clear, therefore, that Mrs. Cottone's interest, rather than being adverse, actually coincides with the interests of the estate.

Miss Bowman also contends that even if Mrs. Cottone had been allowed to testify, her testimony would not constitute the clear, precise and indubitable proof required to establish an oral assignment. We do not determine whether Mrs. Cottone's testimony would have established either an oral assignment or a change of beneficiary. She never had the opportunity to present her evidence by reason of the court's erroneous ruling relating to the "Dead Man's Act." The court en banc was satisfied, however, that, "From a reading of the offer of proof made at the trial of this case, we feel that this would be a matter which would have to be passed upon at the trial of the case." In determining whether a new trial shall be granted, the lower court may exercise great discretion. On appeal, such an order will not be reversed unless a palpable abuse of this discretion clearly appears. We find no such abuse

in the court's order which simply permits Mrs. Cottone to present that evidence which was improperly excluded at trial and upon which her whole claim is based. Cf. *Geelen v. Pennsylvania Railroad Company*, 400 Pa. 240, 161 A. 2d 595 (1960).

Order affirmed.