485 A.2d 454

In re ESTATE OF Eileen Walls CECCHINE.

Appeal of John CECCHINE, father and natural guardian of Michael Cecchine, Richard Cecchine, Christopher Cecchine and John Cecchine, Minors.

Superior Court of Pennsylvania.

Argued May 9, 1984.

Filed Nov. 30, 1984.

Richard H. Anderson, Media, for appellant.

Michael G. Cullen, Drexel Hill, for participating party.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

This is an appeal from a decree of the Orphans' Court Division in Delaware County which allowed a claim against a decedent's estate for legal services allegedly rendered to the decedent during her lifetime. The father and natural guardian of the decedent's four minor children contends on appeal (1) that the court erred in permitting the claimant to testify to legal services performed during the lifetime of the decedent, and (2) that the competent evidence was insufficient to support the court's allowance of the claim. There is merit in both contentions. Therefore, we reverse.

Eileen Walls Cecchine died intestate on February 16, 1980, survived by four minor children as her only heirs. Caroline Cecchine, the administratrix of her estate, filed a first and final account showing a balance for distribution in the amount of $6,484.97. The administratrix denied a claim filed by Michael G. Cullen, Esquire,[1] who contended that he was entitled to legal fees in the amount of $3,243.30 for services rendered to the decedent, as well as for costs incurred, from January 19, 1977 to February 16, 1980 in connection with a marital dispute and litigation. At a subsequent hearing on the claim for attorney's fees, Cullen submitted to the court by stipulation an affidavit by the attorney for the decedent's former husband (the father of the children and the present appellant) which recited some of the services rendered on behalf of the husband and referred to negotiations and hearings during which the claimant had been present on behalf of the decedent. The claimant was then permitted to testify, over objection, that he had prepared a petition under the Protection From Abuse Act, had prepared a complaint in assumpsit, had been

---

1. Cullen filed the claim on behalf of his law firm, Stapleton, Colden & Cullen.

involved in drafting and revising a property settlement agreement, and had represented the decedent in divorce and nonsupport proceedings. He said that he had been paid $673 for services performed prior to June 13, 1977 and had received $350 thereafter. His claim, he said, was for $3,243.30. He conceded that no bill for this amount had ever been sent to the decedent during her lifetime. A review of the record reveals no evidence of time records— the claimant said he had kept none—and no itemization of the services rendered.[2] Moreover, there was no evidence of the fair and reasonable value of the services rendered by the claimant.

The administratrix of the decedent's estate did not take an appeal from the decree entered by the Orphans' Court; and the present appeal was filed on behalf of the decedent's minor children by their father. The first issue to be determined, therefore, is whether the father of the minor heirs has standing to appeal. As a general rule, any interested party who has been aggrieved by a final order or decree of the Orphans' Court Division may appeal. Pa.R. A.P. 501; D. Hunter, *Pennsylvania Orphan's Court Commonplace Book*, Appeals § 1 (2d ed. 1979). In the instant case, it is the children of the decedent who are directly affected by the decree allowing the claim for counsel fees, for the payment thereof will reduce the balance remaining for distribution to them as heirs of the decedent. See: *In re Estate of Hain*, 464 Pa. 349, 353, 346 A.2d 774, 776 (1975). See also: *In re Estate of Patrick*, 487 Pa. 355, 358 n. 2, 409 A.2d 388, 390 n. 2 (1979). Because the children are minors, their interests on appeal can be represented by their father and natural guardian. See: *Bertinelli v. Galoni*, 331 Pa. 73, 75, 200 A. 58, 59 (1938) (any person may act as a minor's next friend provided he has no interest adverse to the minor he represents).

2. A statement attached as an exhibit to appellee's appellate brief, which does itemize the services rendered and costs incurred, was not admitted into evidence and is not a part of the record certified to this court. Therefore, we may not consider it. *McAllonis v. Pryor*, 301 Pa.Super. 473, 475, 448 A.2d 5, 6 (1982).

In *Dart Estate*, 426 Pa. 296, 232 A.2d 724 (1967), the Supreme Court said:

(1) "Claims of this nature against dead men's estates, resting entirely in parol, ... presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done[;]" (2) all claims against the estate of a decedent must be proven by evidence which is clear, precise and convincing; (3) [claimant], proceeding on a quantum meruit theory, has the burden of proving (a) the performance of services, (b) the decedent's acceptance of them, and (c) their value; (4) [claimant] must overcome a presumption that any services rendered were paid for from time to time while they continued, a presumption which will gather strength with each succeeding year ...; and finally, (5) "... the finding of the auditing judge who saw and heard the witnesses is conclusive where there is evidence to support it, and it is not based on a capricious disbelief of the witnesses."

*Id.*, 426 Pa. at 298, 232 A.2d at 725–726 (citations omitted).

 Appellee argues that appellant has no standing to challenge the competency of Cullen's testimony under the dead man's rule because appellant does not claim "through the decedent." He contends that only the administratrix, the nominal representative of the estate, has standing to assert the dead man's rule. There is no merit in this argument. In the first place, Cullen's competency was challenged in the court below by the administratrix. The issue, therefore, has been properly preserved for appellate review. Moreover, it is not essential that the party asserting the dead man's rule be the nominal representative of the decedent; it is required, rather, that he represent the *interest* of the decedent. Cf. *Donsavage Estate*, 420 Pa. 587, 601, 218 A.2d 112, 121–122 (1966); *Grasso v. John Hancock Mutual Life Insurance Co.*, 206 Pa.Super. 562, 565–566, 214 A.2d 261, 262 (1965). Where a decedent has died intestate and a claim is made against the estate for

payment of services allegedly rendered to the decedent during her lifetime, the heirs represent the interest of the decedent and claim through the decedent.

The dead man's rule is stated at 42 Pa.C.S. § 5930 in pertinent part as follows:

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead ... and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased ... party, shall be a competent witness to any matter occurring before the death of said party ....

"The purpose of the dead man's act is to prevent the injustice that would result from permitting a surviving party to a transaction to testify favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the death of the decedent. The theory is that because the decedent's representative is unable to present evidence regarding the transaction, the other party to the transaction should be similarly restricted." *Visscher v. O'Brien*, 274 Pa.Super. 375, 382, 418 A.2d 454, 458 (1980) (citation omitted). See also: *Estate of Kofsky*, 487 Pa. 473, 476, 409 A.2d 1358, 1359 (1979). The statutory exclusion pertains not only to testimony of an actual transaction or agreement giving rise to a claim against the decedent, but also to any matter occurring before death which had any bearing on the claim being made. *Hendrickson Estate*, 388 Pa. 39, 46, 130 A.2d 143, 147 (1957). A surviving party is not permitted to testify as to any relevant matters occurring before the decedent's death, even though they be independent matters or facts which in no way can be regarded as transactions with, or communications by, the decedent. *Lieber v. Eurich*, 201

Pa.Super. 186, 188, 192 A.2d 159, 160 (1963). The rule, therefore, renders incompetent the testimony of an attorney who is seeking to recover compensation for legal services rendered during the life of a decedent. His testimonial incompetency is not limited to facts regarding the contract of hiring; it extends also to the nature and value of the services performed during the decedent's lifetime. See: *Hohwieler Estate*, 23 Bucks 234 (1973) (attorney making claim for unpaid legal fees arising from representation of decedent in divorce action is incompetent to testify regarding the nature, extent or value of his services).

An exception to the dead man's rule has been created by the terms of 42 Pa.C.S. § 5933(a), which provide:

In any civil action or proceeding before any tribunal of this Commonwealth, or conducted by virtue of its order or direction, although a party to the thing or contract in action may be dead ..., and his right thereto or therein may have passed, either by his own act or by the act of the law, to a party on record who represents his interest in the subject in controversy, nevertheless any surviving or remaining party to such thing or contract or any other person whose interest is adverse to the said right of such deceased ... party, shall be a competent witness to any relevant matter, although it may have occurred before the death of said party ..., if and only if such relevant matter occurred between himself and another person who may be living at the time of the trial and may be competent to testify, and who does so testify upon the trial against such surviving or remaining party or against the person whose interest may be thus adverse, or if such relevant matter occurred in the presence or hearing of such other living or competent person.

This exception to the rule of incompetency does not aid the claimant in the present case. Although some of his services were rendered in the presence of his client's former husband and the husband's attorney, neither the husband nor the husband's attorney testified against him. The husband did not testify, and his attorney gave testimony, in the form

of an affidavit, on behalf of the claimant. The claimant could not make himself competent to testify by offering the testimony of a third person to corroborate his testimony. See: *Stevenson v. Titus*, 332 Pa. 100, 104, 2 A.2d 853, 856 (1938); *Cake v. Cake*, 162 Pa. 584, 585, 29 A. 797, 798 (1894). Moreover, the surviving party is competent only for the purpose of contradicting the matters testified to by the living witness. *Bowman's Estate*, 301 Pa. 337, 342, 152 A. 38, 40 (1930), *overruled on other grounds, Dalbey's Estate*, 326 Pa. 285, 192 A. 129 (1937). In the instant case, the claimant was permitted to testify generally about the legal services which he had rendered for the decedent during her lifetime. This was clearly error.

▮▮▮▮ The only competent evidence before the auditing judge was the testimony which came from the husband's attorney, the surviving witness. This evidence, however, was wholly inadequate to support the claim. Although there was evidence that some legal services had probably been performed, there was no competent evidence to overcome the presumption of periodic payment. Moreover, neither the total hourly involvement of counsel nor the precise nature or complexity of the services rendered can be determined from the competent evidence received. There is not one iota of evidence to substantiate that $3,423.30 was a fair and reasonable charge for the services rendered by the claimant. "Where one person renders personal services to another ...[,] evidence of the value of such services rendered and accepted is sufficient if it affords a basis for estimating with reasonable certainty what the claimant is entitled to." *Seiler Estate*, 169 Pa.Super. 359, 363, 82 A.2d 556, 558 (1951). Competent evidence of the value of the services performed must appear of record. *Reuss Estate*, 422 Pa. 58, 62, 220 A.2d 822, 825 (1966). Reasonable value of services cannot be established by mere conjecture. See: *Klemow Estate*, 411 Pa. 136, 141–142, 191 A.2d 365, 368–369 (1963). Rather, the evidence must be clear, direct, precise and convincing. *Estate of Allen*, 488 Pa. 415, 422,

412 A.2d 833, 836 (1980); *In re Estate of Hain, supra* 464 Pa. at 353, 346 A.2d at 776.

The auditing judge in this case did not make an independent analysis of the value of claimant's legal services. Rather, the court perfunctorily accepted the full amount of the attorney's unsupported claim. Compare: *Lebo Estate,* 403 Pa. 123, 169 A.2d 105 (1961) (hearing court made independent determination of value of services). We are constrained to conclude that this allowance of the claim was error. The competent evidence was entirely inadequate to support appellee's claim.

Reversed and claim disallowed. Remanded for distribution consistent with the foregoing opinion. Jurisdiction is not retained.